UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Peter and Susan Yakowicz,                                                Civil No. 12-1180 (DWF/LIB)

           Plaintiffs,

v.                                                                                                    **MEMORANDUM**
                                                                                                      **OPINION AND ORDER**
BAC Home Loans Servicing, LP;
Mortgage Electronic Registration
Systems, Inc., and The Bank of Mellon
f/k/a The Bank of New York as Trustee
for the Certificateholders of CWABS, Inc.,
Asset-Backed Certificates, Series 2002-6,
Assignee of Mortgage,

           Defendants.

_____

Joel A. Hilgendorf, Esq., and Kathleen M. Loucks, Esq., Hellmuth & Johnson PLLC, counsel for Plaintiffs.

Andre T. Hanson, Esq., Ronn B. Kreps, Esq., and Sparrowleaf Dilts McGregor, Esq., Fulbright & Jaworksi LLP, counsel for Defendants.
_____

This matter is before the Court on a Motion to a Dismiss brought by Defendants BAC Home Loans Servicing, LP ("BAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and The Bank of New York Mellon ("BONYM") (together, "Defendants"). (Doc. No. 20.) For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

In December 2002, Plaintiffs entered into a mortgage and a note in the amount of $324,000 with Countrywide Home Loans, Inc. ("Countrywide"). (Doc. No. 19, Second Am. Compl. ¶ 6.) Plaintiffs allege that they entered into a written loan modification with Countrywide on July 31, 2008, under which their principal balance was $311,602.21, with monthly payments of $3,393.90, effective on September 1, 2008 (the "2008 Loan Modification Agreement"). (*Id*. ¶ 8; Doc. No. 23, Hanson Decl. ¶ 2, Ex. 1.) According to BAC's payment detail sheet, Plaintiffs made two payments in September 2008— one in the amount of $3,580.51 and another in the amount of $2,487.06. (Second Am. Compl. ¶ 9.) Plaintiffs did not make any payments in October or November 2008. (*Id*. ¶¶ 9, 10.) Plaintiffs received information from a credit reporting agency indicating that Countrywide reported Plaintiffs' October and November 2008 payments as late. (*Id*. ¶ 11.) Plaintiffs allege that Peter Yakowitcz contacted Countrywide in November 2008 and was told that his account was current and that corrected information would be sent to the reporting agencies. (*Id*. ¶ 12.) Plaintiffs allege that Countrywide sent them a letter dated December 22, 2008, in which Countrywide indicated that it had responded to Plaintiffs' request for a credit report adjustment with respect to the October and November payments. (*Id*.)

Plaintiffs assert that they believed their account was current. (*Id*. ¶ 13.) Plaintiffs then made a payment in the amount of $2,525.46 on December 22, 2008. (*Id*. ¶ 14.) On December 23, 2008, Plaintiffs received a Notice of Intent to Accelerate from Countrywide, which indicated a past due amount of $4,257.24. (*Id*. ¶ 15.) Plaintiffs

2

received a monthly statement on December 31, 2008, indicating that the amount past due was $5,050.92.  (*Id*. ¶ 16.)  Plaintiffs contacted Countrywide in January 2009 and spoke to a representative who suggested a loan modification and allegedly told Plaintiffs to stop making payments.  (*Id*. ¶ 17.)  Plaintiffs stopped making payments and submitted loan modification documentation on February 17, 2009.  (*Id*. ¶¶ 18, 19.)  A few weeks later, Plaintiffs contacted Countrywide to inquire into the status of their loan modification; they were told it would take some time to process.  (*Id*. ¶ 20.)  Plaintiffs' last monthly statement from Countrywide was dated January 29, 2009.  (*Id*. ¶ 21.)

The next correspondence Plaintiffs received regarding their loan was on December 21, 2009, at which time they were informed by a law firm that foreclosure proceedings had been initiated and that the servicer of their loan was BAC.  (*Id*. ¶ 23.)  Plaintiffs contacted BAC and were advised that they could not make payments on the loan given the foreclosure proceedings.  (*Id*. ¶ 24.)  Plaintiffs submitted new loan modification paperwork to BAC in January 2010.  (*Id*. ¶ 25.)

On January 20, 2010, Peter Yakowicz sent a letter to BAC's counsel, which reads in substantial part:

> In accordance with your letter of December 21, 2009, I am disputing the debt, asking you to provide the name of the original creditor, and advising you of the status of the loan in question.
>
> I am advising you of the following important and pertinent facts in this issue:
> 1) My home loan was originated and managed by Countrywide Home Loans
> 2) In March or April 2009, I applied for a home loan modification with Countrywide

3

    3) I was advised by Countrywide that processing this modification could take "a few months"
    4) Subsequent to the modification application, the following has occurred:
        a. Countrywide never advised me of the status of the modification application
        b. Neither Countrywide nor Bank of America (BAC Home Loans Servicing) ever notified me that the loan was being managed by BAC rather than Countrywide.
        c. No notification was ever provided by Countrywide nor BAC regarding late payments
        d. No notification was provided by Countrywide nor BAC regarding potential foreclosure.
    5) Shortly after receiving the letter from your firm, BAC Home Loans left a voice message for me.
    6) Subsequently, after a couple of conversations with BAC, they have qualified me for a home loan modification under the nationwide home retention program.
    7) As of last Friday, 1/15/2010, I submitted the requirements to BAC to process this modification.
    8) I have attached my cover letter to BAC for your reference. If you need copies of all documents sent forward to BAC, please let me know.

> I would ask that you suspend foreclosure actions since BAC is currently processing the loan modification. I further request copies of all documents that would indicate 1) Countrywide never approved a loan modification for said loan in 2009; 2) Countrywide transferred management/ownership of said loan to BAC; 3) Any notification to me, the borrower, that payments were late; 4) Any notification to me, the borrower, that the loan was in danger of default/foreclosure of the property.

(Hanson Decl. ¶ 4, Ex. 3.) By letter dated February 1, 2010, counsel for Defendants responded, in part by enclosing a copy of the note and mortgage and explaining that it would forward Plaintiffs a payment history along with reinstatement and payoff figures. (*Id.* ¶ 5, Ex. 4.) Peter Yakowicz sent a second letter on February 11, 2010, which read in part:

> In my letter of January 20th, I mentioned that I disputed the debt, offered facts involving this situation and requested pertinent documents. You did

4

> not provide any of the documents I requested, but I will elaborate on disputing the debt.
>
> The loan was being serviced by Countrywide. They allowed me to submit a loan modification request sometime around 11 months ago. At some point, apparently during this time, the loan was transferred to Bank of America. So, I was never informed of two critical issues: 1) the status of my loan modification request and 2) the fact that the loan had been transferred to Bank of America.
>
> This is all relevant to the amount of the debt in question. I agree that I had taken out a mortgage and clearly there is still a debt owed on that mortgage. However, due to the lack of communication from Countrywide/BOA mentioned above, the exact amount of the debt is in question . . . .

(*Id.* ¶ 6, Ex. 5.) Plaintiffs allege that they continued to communicate with BAC with respect to potential loan modifications, but that their requests for a loan modification were denied. (Second Am. Compl. ¶¶ 27-32.) Again on August 25, 2010, Peter Yakowicz sent BAC a letter documenting the lack of communication from BAC and explaining BAC's ultimate decision that Plaintiffs were not eligible for a modification. (Hanson Decl. ¶ 7, Ex. 6.) On or about September 21, 2011, Plaintiffs received notice of the mortgage foreclosure sale, which occurred on November 10, 2011. (Second Am. Compl. ¶ 35.)

Plaintiffs obtained *ex parte* relief in state court based on the allegations of their First Amended Complaint ("FAC"). (Doc. No. 1, Exs. 1 & 2.) In the FAC, Plaintiffs asserted claims for negligent misrepresentation, promissory estoppel, injunctive relief, and a violation of Minn. Stat. § 58.13. Specifically, Plaintiffs alleged that BAC orally represented that Plaintiffs should default on their loan, and that BAC improperly denied Plaintiffs a home loan modification. BAC removed the action to this Court and moved to

5

dismiss Plaintiffs' complaint. (Doc. Nos. 1 & 2.) Plaintiffs filed a Second Amended Complaint. (Second Amended Compl.) In their Second Amended Complaint, Plaintiffs seek injunctive relief setting aside the Sheriff's Sale of their home. (*Id.*) Their demand for relief is based on the allegation of a breach of a 2008 Loan Modification Agreement and violations of the Real Estate Settlement Procedures Act ("RESPA"). (*Id.*)

## DISCUSSION

### I.      Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999).[1]

---

[1]    Defendants submitted several documents in support of their motion to dismiss. These documents include a copy of the July 2008 Loan Modification Agreement, the January 20, 2010, February 11, 2010, and August 25, 2010 letters from Peter Yakowicz to BAC, as well as the February 1, 2010 letter from BAC to Peter Yakowicz, all of which are referred to in Plaintiffs' Second Amended Complaint. (Second Am. Compl. ¶¶ 26, 27, 28, and 33.) The Court properly considers these materials because they are
(Footnote Continued on Next Page)

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.   RESPA

Count One of the Second Amended Complaint alleges that Defendants violated RESPA by failing to notify Plaintiffs that BAC had become the servicer for Plaintiffs' mortgage and note in 2009, and for failing to properly respond to Plaintiffs' qualified written request ("QWR").

Plaintiffs allege a violation of 12 U.S.C. § 2605(c), which provides in part that "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or

---

(Footnote Continued From Previous Page)

necessarily embraced by the pleadings. *See Porous Media Corp.*, 186 F.3d at 1079; *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1357.

transfer." 12 U.S.C. § 2605(c)(1).  The statute of limitations for this claim is three-years. *See* 12 U.S.C. § 2614.  Defendants assert that BAC came into existence on April 21, 2009, when Countrywide formally changed its name to BAC Home Loans Servicing, LP.  (Hanson Decl. ¶ 8, Ex. 7.)[2]

Defendants first argue that Plaintiffs' claim under 12 U.S.C. § 2605 is time-barred because Plaintiffs did not file its original complaint until May 10, 2012, more than three years after the name change in April 2009.  Plaintiffs argue that they did not learn about the change until December 21, 2009, thus making the filing of this action timely.  The Court, however, need not decide whether Plaintiffs' claim is timely because the Court concludes that the transfer of servicing rights to BAC, via a name change, does not trigger the notice obligations of 12 U.S.C. § 2605.  Here, Plaintiffs' original servicer, Countrywide, changed its name to BAC.  RESPA's implementing regulations clarify that a transfer of servicing rights under these circumstances does not require the notice of 12 U.S.C. § 2605.  In particular, 24 C.F.R. § 3500.21, which relates to "Mortgage servicing transfers," provides, with respect to the notice requirement, that:

> The following transfers are not considered an assignment, sale, or transfer
> of mortgage loan servicing for purposes of this requirement if there is no

---

[2]  Defendants attach the Certificate of Assistant Secretary of BAC GP, LLC, certifying the name change of Countrywide Home Loans Servicing, LP, to BAC Home Loans Servicing, LP, along with documents publicly filed with the Nevada Secretary of State and the Texas Secretary of State.  (Hanson Decl. ¶ 8, Ex. 7.)  The Certificate of Amendment to the Certificate of Limited Partnership, executed on April 21, 2009 and filed in the Office of the Secretary of State of State of Texas, is part of the public record and the Court takes judicial notice of it.

8

      change in the payee, address to which payment must be delivered, account number, or amount of payment due:

      (A) Transfers between affiliates;

      (B) Transfers resulting from mergers or acquisitions of servicers or subservicers; and

      (C) Transfers between master servicers, where the subservicer remains the same.

24 C.F.R. § 3500.21(d).  The Court reads this regulation as providing that no transfer notice is required in circumstances where, as here, the servicer merely changes its name without making any other material changes, such as a change in the payee, address to which payment must be delivered, account number, or amount due.  *See, e.g., Huckfeldt v. BAC Home Loans Servicing, LP*, Civ. No. 10-1072, 2011 WL 4502036, at *9 (D. Colo. Sept. 29, 2011) (notice requirement not triggered where entity that owned the relevant loan changed its name).  Here, while Countrywide changed its name to BAC, Plaintiffs have not alleged any material change affecting the servicing of their loan, such as a change in account number, payment amount, or the address to which to send payments.  Thus, the Court concludes that Plaintiffs' RESPA claim for lack of notice of change of servicer lacks merit.[3]

---

[3]     Without elaboration, Plaintiffs claim that they can allege that the change did result in a material change.  The Court notes that Plaintiffs have already submitted a Second Amended Complaint and, therefore, have had ample opportunity to make such an allegation.

Plaintiffs also assert that Defendants violated RESPA by failing to respond to its QWRs. RESPA requires that when a "servicer of a federally related mortgage loan receives a [QWR] from the borrower . . . for information related to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). According to Plaintiffs' Second Amended Complaint, Plaintiffs' January 20, 2010, February 11, 2010, and August 25, 2010 letters all constituted QWRs. The contents of these letters are detailed above. Defendants dispute that Plaintiffs' January 20, 2010 and follow-up letters constitute QWRs.

A QWR is a:

> written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the buyer; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). RESPA only obligates loan servicers to respond to requests for information relating to the servicing of their loans. *See, e.g., Hintz v. JP Morgan Chase Bank, N.A.*, Civ. No. 10-2825, 2011 WL 579339, at *8 (D. Minn. Feb. 8, 2011). "Servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."


12 U.S.C. § 2605(i)(3). Upon receipt of a QWR, a loan servicer has 20 days to acknowledge its receipt and 60 days to respond. 12 U.S.C. § 2605(e)(1)-(2).

Based on the allegations in the Second Amended Complaint, the Court concludes that Plaintiffs' written requests do not constitute QWRs. Plaintiffs focus on the January 20, 2010 and follow-up letters. In the January 20, 2010 letter, Plaintiffs did not identify any purported errors in Plaintiffs' account, dispute the debt, [4] or request the correction of the same. Nor did they identify any errors in loan servicing. Instead, the January 20, 2010 letter, along with Plaintiffs' follow-up letters, focuses on Plaintiffs' attempt to obtain a loan modification, which is unrelated to the servicing of the loan itself. *See, e.g., Hintz*, Civ. No. 10-2825, 2011 WL 579339, at *8 (noting that courts routinely interpret section 2605 as requiring a QWR to relate to the servicing of the loan, not the modification of a loan); *Van Egmond v. Wells Fargo Home Mortg.*, Civ. No. 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) ("RESPA, however, only obligates loan servicers to respond to borrowers' requests for information relating to the *servicing* of their loans, which does not include loan modification information.").

---

[4]   Plaintiffs point out that the January 20, 2010 letter indicated that Peter Yakowitcz was disputing the debt. (Hanson Decl. ¶ 4, Ex. 3.) However, this conclusory statement is not sufficient. To dispute information about the servicing of a loan, a QWR must include "a statement of the reasons for the belief of the borrower, the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Indeed, in the February 22, 2010 letter, Peter Yakowicz stated: "I agree that I had taken out a mortgage and clearly there is still a debt owed on that mortgage." (Hanson Decl. ¶ 2, Ex. 1.)

In addition, even reading Plaintiffs' Second Amended Complaint liberally, Plaintiffs fail to adequately plead damages caused by either the alleged lack of notice of the change of servicer or the alleged failure to respond to the purported QWRs. Plaintiffs have not alleged any facts to show that Defendants' failure to notify Plaintiffs of the change of servicer or to respond to any purported QWR proximately caused them harm. For example, nothing in the Second Amended Complaint suggests that Plaintiffs needed any of the information requested in the letter in order to make payments, that they paid any late fees, or that BAC reported Plaintiffs to any consumer reporting agencies. To the extent that Plaintiffs' Second Amended Complaint makes conclusory allegations related to damages, such as allegations that they were damaged by way of additional fees, negative effect on their credit, and the initiation of foreclosure, they fail to tie those damages to a RESPA violation. Even a liberal reading of the Second Amended Complaint leaves the Court with mere "labels and conclusions," which do not satisfy Plaintiffs' obligation under *Twombly*.

For the above reasons, the Court concludes that Plaintiffs have failed to state a RESPA claim upon which relief can be granted. The Court therefore dismisses Count One.

**III.    Breach of Contract**

In Count Three, Plaintiffs assert that Defendants breached their obligations under the 2008 Loan Modification Agreement. Plaintiffs argue that Defendants improperly calculated amounts due and owing under the Loan Modification Agreement, improperly calculated the interest rate, and improperly charged late fees. In addition, Plaintiffs argue

that Defendants did not refer to the terms of the 2008 Loan Modification Agreement in any of the correspondence or foreclosure proceedings and the amounts used in the foreclosure sale did not take into consideration the changes to the loan under the loan modification. Plaintiffs assert that they have evidence outside the pleadings to support this claim. Defendants argue that Plaintiffs' breach of contract allegations fail to state a claim. In particular, Defendants assert that the allegations of the Second Amended Complaint demonstrate that Plaintiffs themselves breached the express terms of the 2008 Loan Modification Agreement by failing to make timely payments.

Under the 2008 Loan Modification Agreement, Plaintiffs were obligated to make a payment of $3,393.90 on September 1, 2008, and then continue to pay the same amount each month thereafter. (Hanson Decl. ¶ 2, Ex. 1.) Plaintiffs allege that they made two payments in September 2008 totaling $6,067.57. These payments would have satisfied Plaintiffs' obligation in September, but did not satisfy their obligation for their October 2008 payment. Plaintiffs allege that they made their next payment of $2,525.46 on December 22, 2008. (Second Am. Compl. ¶¶ 9, 10, 14.) This amount would not have satisfied their payment obligation for December, let alone any past due amounts.

On the face of Plaintiffs' Second Amended Complaint, there is no dispute that Plaintiffs did not make payments sufficient to keep their account current. Accordingly, even reading the Second Amended Complaint liberally, the allegations demonstrate that Plaintiffs materially breached the terms of the 2008 Loan Modification Agreement by failing to make the required payments. Plaintiffs assert that they communicated with Countrywide and were told that their account was current, and argue that this

communication should somehow act to excuse their failure to make the required payments.  However, the Minnesota Credit Agreement Statute, Minn. Stat. § 513.33, requires any such loan modification to be in writing and signed by both parties.  *See, e.g.*, *Brisbin v. Aurora Loan Servs., LLC*, 679 F.3d 748, 753 (8th Cir. 2012); *Ming'ate v. Bank of Am., N.A.*, Civ. No. 11–1787, 2011 WL 4590431, *4 (D. Minn. Sept. 30, 2011) (explaining that the Minnesota Statute of Frauds, and specifically Minn. Stat. § 513.33, provides that implied-in-fact oral promises to modify loans fail as a matter of law).  Because Plaintiffs cannot raise a claim for breach of contract against BAC after they first breached the contract themselves, Plaintiffs' breach of contract claim is properly dismissed.[5]

**ORDER**

For the reasons stated above, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss (Doc. No. [20]) is **GRANTED**.

2. Plaintiffs' Second Amended Complaint (Doc. No. [19]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 15, 2013             s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge

---

[5] In addition, because Plaintiffs' claims for declaratory judgment and injunctive relief (Counts Two and Four, respectively) are derivative of Plaintiffs' substantive claims, they similarly fail.